UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>Conservation Law Foundation, Inc., )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br> )<br>Greyhound Lines, Inc. )<br> )<br> Defendant. )<br>_____ ) | Case No. _____<br><br>**COMPLAINT FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF AND CIVIL PENALTIES**<br><br><br>(Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*) |

## INTRODUCTION

1.      This is a citizen enforcement suit brought by Conservation Law Foundation, Inc.

("Plaintiff" or "CLF"), on behalf of its individual members, to redress and prevent Clean Air Act

violations that negatively affect the health and lives of Massachusetts residents by repeatedly

exposing them to harmful air pollutants.

2.      Greyhound Lines Inc., ("Greyhound," or "Defendant") owns, operates, and/or manages a

fleet of vehicles that travel and are housed in and around the Commonwealth of Massachusetts,

including: 700 Atlantic Ave., Boston, MA 02111 (the "South Station Bus Terminal") and 569 E.

1st St. S. Boston, MA 02111 (the "South Boston Bus Lot").

3.      Greyhound has repeatedly violated, are violating, and will continue to violate the Clean

Air Act ("CAA" or "Act") and the Massachusetts State Implementation Plan ("SIP"),

specifically, the Massachusetts motor vehicle idling limits contained within the federally

enforceable Massachusetts SIP.

4.      Upon information and belief, Greyhound has, on numerous occasions, caused, suffered,

allowed, and/or permitted the idling of motor vehicles in excess of the five-minute time period

allowed by 310 C.M.R. § 7.11(1)(b), and not in accordance with any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

5.      Greyhound has not taken actions sufficient to prevent future violations of the type alleged in this Complaint.

6.      Absent an appropriate order from this Court, Greyhound is likely to repeat its violations of the Act as described below. Plaintiff intends this action to encompass post-Complaint violations of the types alleged in this Complaint.

## THE CITIZEN SUIT PROVISION OF THE CLEAN AIR ACT

7.      Congress has declared that the purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

8.      In the "citizen suit" provision of the Act, Congress authorized any person to commence a civil action against any person who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an emission standard or limitation under the Act. 42 U.S.C. § 7604(a)(1).

9.      The Act's definition of an "emission standard or limitation" includes any standard or limitation established "under any applicable State implementation plan approved by the Administrator." 42 U.S.C. § 7604(f)(4).

10.     The Act directs each state or local air pollution control agency to develop a State Implementation Plan ("SIP") that describes how it will achieve and maintain compliance with National Ambient Air Quality Standards ("NAAQS") set by the United States Environmental Protection Agency ("EPA") to protect human health and the environment. 42 U.S.C. § 7407(a).

11.     Standards or limitations established under any EPA-approved SIP are enforceable by citizens under the Act. 42 U.S.C. § 7604(f)(4).

12.     The Commonwealth of Massachusetts has an EPA-approved SIP that includes the regulation located at 310 C.M.R. § 7.11(1)(b) (the "Massachusetts idling regulation"), which prohibits the unnecessary operation of the engine of a motor vehicle while the vehicle is stopped for a period of time in excess of five minutes. 40 C.F.R. § 52.1123; 40 C.F.R. § 52.1120(c); 37 Fed. Reg. 23,085.

13.     In this action, Plaintiff alleges Greyhound has violated the Massachusetts idling regulation.

14.     The Clean Air Act's citizen suit provision provides the district courts of the United States with jurisdiction to "enforce" emission standards and limitations under the Act and to impose an appropriate civil penalty on the violator of those emissions standards and limitations. 42 U.S.C. § 7604(a).

## PARTIES

15.     Plaintiff Conservation Law Foundation ("CLF") is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street, Boston, MA 02110. CLF has over 5,600 members, including nearly 3,000 members in Massachusetts. CLF's mission includes safeguarding the health and quality of life of New England communities facing the adverse effects of air pollution.

16.     CLF's members include individuals who live and recreate near the locations where vehicles owned, operated, and/or managed by Greyhound Lines, Inc. idle in excess of five minutes.

17.     The health, well-being, quality of life, and enjoyment of CLF members are harmed by Defendant's violations of the CAA.

18.     "Person" in the CAA is defined to include "corporations." 42 U.S.C. § 7602(e). CLF is a corporation and thus a "person" under the CAA.

19.     Defendant Greyhound Lines, Inc. is a transportation-focused corporation organized under the laws of the state of Delaware.

20.     Greyhound does business within the Commonwealth of Massachusetts.

21.     The principal office for Greyhound is located at P.O. Box 660362 Dallas, TX 75266.

22.     Greyhound operates 2,300 destinations in North America carrying nearly 16 million passengers a year.

23.     Greyhound is a person within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## JURISDICTION, VENUE, AND NOTICE

24.     Subject matter jurisdiction is conferred upon this Court by 42 U.S.C. § 7604(a) (CAA citizen suit jurisdictional provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

25.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) (federal venue provision) because vehicles owned, operated, managed, and/or stored by Greyhound were documented idling within this District and because the bus lots owned and/or operated by Greyhound where idling occurred are located within this District.

26.     Plaintiff gave Greyhound notice of the violations alleged in this Complaint more than 60 days prior to commencement of this lawsuit by a letter (the "Notice Letter") mailed to Bill Blankenship, President and COO of Greyhound Lines, Inc., and The Corporation Trust

Company, Registered Agent of Greyhound Lines, Inc. A copy of the Notice Letter is attached as Exhibit 1. The Notice Letter is incorporated by reference herein.

27.     Copies of the Notice Letter were also mailed to the Administrator of EPA, the Regional Administrator of EPA for Region 1, the Massachusetts Department of Environmental Protection ("MassDEP") Commissioner, and the EPA Citizen Suit Coordinator.

28.     Each of the addressees identified in the preceding paragraphs, including Greyhound, received the Notice Letter. A copy of each return receipt is attached as Exhibit 2.

29.     The Notice Letter satisfies the pre-suit notice requirements of the CAA, pursuant to 42 U.S.C. § 7604(b).

30.     Neither MassDEP nor EPA has commenced a civil action against Greyhound in court to enforce the violations of vehicle anti-idling laws alleged in this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

31.     The provisions of the Commonwealth of Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) are part of a federally enforceable SIP approved by EPA under section 110 of the CAA. 42 U.S.C. § 7410; 40 C.F.R. § 52; 37 Fed. Reg. 23,085.

32.     The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) provides:

> No person shall cause, suffer, allow, or permit the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes. 310 CMR 17.11 shall not apply to:
>
> 1. vehicles being serviced, provided that operation of the engine is essential to the proper repair thereof, or
>
> 2. vehicles engaged in the delivery or acceptance of goods, wares, or merchandise for which engine assisted power is necessary and substitute alternate means cannot be made available, or
>
> 3. vehicles engaged in an operation for which the engine power is necessary for an associated power need other than movement and substitute alternate power

means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution.

33.     As a federally enforceable SIP under section 113(b) of the Act, 42 U.S.C. § 7413(b), each separate violation of the Massachusetts idling regulation subjects the violator to a penalty of up to $121,275 per day per violation for all CAA violations occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023. 40 C.F.R. §§ 19.2, 19.4.

## FACTUAL BACKGROUND

34.     Greyhound owns, operates, and/or manages, or has owned, operated, and/or managed, buses in Massachusetts.

35.     Vehicles owned, operated, and/or managed by Greyhound begin their routes to various cities outside the Commonwealth of Massachusetts at South Station Bus Terminal located at 700 Atlantic Avenue, Boston, MA 02111.

36.     Vehicles owned, operated, and/or managed by Greyhound are stored and/or maintained at the South Boston Bus Lot in the Commonwealth of Massachusetts, located at 569 East First Street, Boston, MA 02127.

37.     Greyhound owns, operates and/or manages vehicles, including diesel-fueled vehicles, carrying passengers from Boston to cities across the United States, including New York City and Washington D.C.

38.     Diesel-fueled vehicles emit diesel fuel exhaust, which contains fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants.

39.     Fine particulates have been found to impair lung function, aggravate respiratory illnesses such as asthma, bronchitis, and emphysema, and are associated with premature deaths.

40.     The pollutants which comprise vehicle exhaust have been linked with worse health effects from COVID-19.

41.     Particulate air pollution can make people more susceptible to COVID-19 infection and its most severe symptoms by causing or contributing to lung inflammation and chronic lung diseases.

42.     Exposure to $NO_x$ can aggravate respiratory diseases, particularly asthma, and lead to respiratory symptoms such as coughing, wheezing, and difficulty breathing.

43.     Longer exposures to elevated concentrations of $NO_x$ may contribute to the development of asthma and potentially increase susceptibility to respiratory infections.

44.     People with asthma, as well as children and the elderly, are generally at greater risk for the health effects of $NO_x$.

45.     The average national rate of asthma prevalence among adults in the United States is 8.0%. Ctr. for Disease Control and Prevention, *Most Recent National Asthma Data* (last reviewed May 10, 2023), https://www.cdc.gov/asthma/most_recent_national_asthma_data.htm.

46.     Asthma prevalence among school-age children in Suffolk County is 13.7%. Mass. Dep't of Pub. Health, *Explore Pediatric Asthma Maps & Tables*, Bureau of Climate and Env't Health (last updated July 23, 2024), https://matracking.ehs.state.ma.us/Health-Data/Asthma/index.html#MyPopup.

47.     Studies have shown that exposure to air pollutants such as PM 2.5 can lead to Alzheimer's in brain tissue, as there is a correlation between air pollution and cognitive decline. Amudalat Ajasa, *Air Pollution Tied to Signs of Alzheimer's in Brain Tissue, Study Finds*, Env't (February 23, 2024, 6:00 AM), https://www.washingtonpost.com/climate-environment/2024/02/23/alzheimers-brain-air-pollution-study/.

48.     Exposure to $SO_2$ can cause respiratory illness, aggravation of asthma, aggravation of existing cardiovascular disease, alteration in pulmonary defenses, and other adverse effects on breathing.

49.     Exposure to high levels of $SO_2$ can cause chronic hypersensitivity to a wide range of pollutants which irritate the respiratory system.

50.     Children, the elderly, and people with asthma, cardiovascular disease, or chronic lung disease (such as bronchitis or emphysema) are particularly susceptible to the adverse effects of $SO_2$.

51.     Benzene is a volatile organic compound ("VOC") and is designated as a Hazardous Air Pollutant under the Clean Air Act. 42 U.S. Code §7412(b)(1).

52.     Benzene is a known human carcinogen. Benzene exposure can also cause neurological harm in humans and animals.

53.     Exposure to formaldehyde can cause eye, nose, and throat irritation and can harm the nasal cavity.

54.     Other effects seen from exposure to high levels of formaldehyde in humans are coughing, wheezing, chest pains, and bronchitis.

55.     Longer exposures to elevated concentrations of formaldehyde have been associated with respiratory symptoms and eye, nose, and throat irritation.

56.     EPA considers formaldehyde to be a probable human carcinogen (cancer-causing agent).

57.     Greyhound causes, suffers, allows, and/or permits the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere from the South Boston and South Station lots.

58.     The Medal of Honor Park is within 0.3 miles of the South Boston Lot.

59.     The Park consists of a playground and a Vietnam Memorial where community members have picnics, walk their dogs, and recreate.

60.     The Massachusetts Bay Transportation Authority bus number seven (7) going outbound and inbound stops at Summer Street and East First Street.

61.     The bus stop mentioned in the preceding paragraph is 450 feet from the South Boston Lot.

62.     Joseph P. Tynan Elementary School is 0.4 miles from the South Boston Lot.

63.     The East 1st Street Dog Park and First Street Park are 0.3 miles from the South Boston Lot.

64.     The South Station Bus Terminal is located directly next to an enclosed parking lot for customers of South Station trains and buses.

65.     The Rose Fitzgerald Kennedy Greenway is located within 0.2 miles of the South Station Bus Terminal.

66.     The Rose Kennedy Greenway is an outdoor greenspace that hosts children's activities and community events commonly used by the residents of Boston.

67.     Tufts Medical Center is 0.5 miles from the South Station Bus Terminal.

68.     Tufts Medical Center is a world-renowned hospital providing care in 47 specialties, serving over 460,000 patients a year on average.

69.     The Boston Harborwalk is approximately 43 miles of continuous walking path that goes through Seaport and Downtown areas in the City of Boston. The path is designed for outside recreation.

70.     Parts of the Boston Harborwalk are within 0.3 miles of the South Station Bus Terminal.

71.     The areas closest on the walking path to the South Station Bus Terminal include the

Rolling Bridge Park, Fort Point Pier, and Lolita Tequila Bar Patio.

72.     According to the 2016-2020 American Community Survey (ACS) data, approximately

675,647 people live in Boston.

### GREYHOUND'S VIOLATIONS OF THE CLEAN AIR ACT

73.     On the dates listed below in separate paragraphs, an investigator observed Greyhound's

vehicles idling in excess of five minutes for the following amounts of time in the following

locations:

| Paragraph Number | Date | Location of Vehicle | Idling Start Time | Idling End Time | Duration of Idling | Excess Idling |
|---|---|---|---|---|---|---|
| 74. | 12/26/2023 | South Boston Bus Lot | 5:00 AM | 5:06 AM | 6 min | 1 min |
| 75. | 12/26/2023 | South Boston Bus Lot | 5:37 AM | 5:56 AM | 9 min | 4 min |
| 76. | 12/26/2023 | 569 E 1St, St. So. Boston MA | 6:03 AM | 6:10 AM | 7 min | 2 min |
| 77. | 12/26/2023 | South Boston Bus Lot | 6:03 AM | 6:15 AM | 12 min | 7 min |
| 78. | 12/26/2023 | South Boston Bus Lot | 7:01 AM | 7:07 AM | 6 min | 1 min |
| 79. | 12/26/2023 | South Boston Bus Lot | 7:37 AM | 7:51 AM | 14 min | 9 min |
| 80. | 12/26/2023 | South Boston Bus Lot | 7:37 AM | 9:54 AM | 137 min | 132 min |
| 81. | 12/26/2023 | South Boston Bus Lot | 8:03 AM | 9:10 AM | 67 min | 62 min |
| 82. | 12/26/2023 | South Boston Bus Lot | 8:18 AM | 8:29 AM | 11 min | 6 min |
| 83. | 12/26/2023 | South Boston Bus Lot | 8:45 AM | 9:23 AM | 38 min | 33 min |
| 84. | 12/26/2023 | South Boston Bus Lot | 9:44 AM | 10:10 AM | 26 min | 21 min |
| 85. | 12/27/2023 | South Boston Bus Lot | 5:01 AM | 5:27 AM | 26 min | 21 min |
| 86. | 12/27/2023 | South Boston Bus Lot | 5:41 AM | 6:05 AM | 20 min | 15 min |

| | | | | | | |
|---|---|---|---|---|---|---|
| 87. | 12/27/2024 | South Boston Bus Lot | 6:54 AM | 7:05 AM | 9 min | 4 min |
| 88. | 12/27/2023 | South Boston Bus Lot | 7:43 AM | 8:11 AM | 28 min | 23 min |
| 89. | 12/28/2023 | South Boston Bus Lot | 5:17 AM | 5:33 AM | 16 min | 11 min |
| 90. | 12/28/2023 | South Boston Bus Lot | 6:03 AM | 6:17 AM | 14 min | 9 min |
| 91. | 12/28/2023 | South Boston Bus Lot | 6:23 AM | 6:39 AM | 16 min | 11 min |
| 92. | 12/28/2023 | South Boston Bus Lot | 6:57 AM | 7:19 AM | 22 min | 17 min |
| 93. | 12/28/2023 | South Boston Bus Lot | 7:41 AM | 7:51 AM | 11 min | 6 min |
| 94. | 12/28/2023 | South Boston Bus Lot | 8:16 AM | 8:26 AM | 10 min | 5 min |
| 95. | 12/28/2023 | South Boston Bus Lot | 8:32 AM | 9:03 AM | 31 min | 26 min |
| 96. | 1/17/2024 | South Boston Bus Lot | 5:05AM | 5:40 AM | 35 min | 30 min |
| 97. | 1/17/2024 | South Boston Bus Lot | 5:30 AM | 5:44 AM | 14 min | 9 min |
| 98. | 1/17/2024 | South Boston Bus Lot | 5:51 AM | 6:19AM | 28 min | 23 min |
| 99. | 1/18/2024 | South Boston Bus Lot | 5:11 AM | 5:30 AM | 19 min | 14 min |
| 100. | 1/18/2024 | South Boston Bus Lot | 6:13 AM | 6:23 AM | 10 min | 5 min |
| 101. | 1/18/2024 | South Boston Bus Lot | 7:38 AM | 7:45 AM | 7 min | 2 min |
| 102. | 1/18/2024 | South Boston Bus Lot | 8:37 AM | 8:41 AM | 14 min | 9 min |
| 103. | 1/18/2024 | South Boston Bus Lot | 9:01 AM | 9:40 AM | 39 min | 34 min |
| 104. | 4/9/2024 | South Boston Bus Lot | 7:45 AM | 8:06 AM | 21 min | 16 min |
| 105. | 4/9/2024 | South Boston Bus Lot | 8:23 AM | 8:43 AM | 20 min | 15 min |
| 106. | 4/10/2024 | South Boston Bus Lot | 4:59 AM | 5:07 AM | 8 min | 3 min |
| 107. | 4/10/2024 | South Boston Bus Lot | 7:32 AM | 8:07 AM | 35 min | 30 min |
| 108. | 4/10/2024 | South Boston Bus Lot | 7:47 AM | 8:05 AM | 18 min | 13 min |
| 109. | 4/10/2024 | South Boston Bus Lot | 7:48 AM | 8:02 AM | 14 min | 9 min |

| | | | | | | |
|---|---|---|---|---|---|---|
| 110. | 4/10/2024 | South Boston Bus Lot | 8:39 AM | 8:45 AM | 6 min | 1 min |
| 111. | 4/18/2024 | South Boston Bus Lot | 5:06 AM | 6:28 AM | 82 min | 77 min |
| 112. | 4/18/2024 | South Boston Bus Lot | 5:06 AM | 6:07 AM | 61 min | 56 min |
| 113. | 4/25/2024 | South Boston Bus Lot | 5:16 AM | 5:43 AM | 27 min | 22 min |
| 114. | 4/25/2024 | South Boston Bus Lot | 7:26 AM | 7:48 AM | 22 min | 17 min |
| 115. | 4/25/2024 | South Boston Bus Lot | 8:18 AM | 8:32 AM | 14 min | 9 min |
| 116. | 4/26/2024 | South Boston Bus Lot | 5:08 AM | 5:36 AM | 28 min | 23 min |
| 117. | 4/26/2024 | South Boston Bus Lot | 5:07 AM | 6:04 AM | 56 min | 51 min |
| 118. | 4/26/2024 | South Boston Bus Lot | 6:28 AM | 6:42 AM | 14 min | 9 min |
| 119. | 4/26/2024 | South Boston Bus Lot | 7:22 AM | 7:30 AM | 8 min | 3 min |
| 120. | 5/20/2024 | South Boston Bus Lot | 8:12 AM | 8:29 AM | 17 min | 12 min |
| 121. | 5/20/2024 | South Boston Bus Lot | 8:31 AM | 8:50 AM | 19 min | 14 min |
| 122. | 5/20/2024 | South Boston Bus Lot | 10:08 AM | 10:14 AM | 6 min | 1 min |
| 123. | 5/28/2024 | South Boston Bus Lot | 8:19 AM | 8:30 AM | 11 min | 6 min |
| 124. | 5/28/2024 | South Boston Bus Lot | 8:52 AM | 9:03 AM | 11 min | 6 min |
| 125. | 5/28/2024 | South Station Bus Terminal | 10:27 AM | 10:45 AM | 18 min | 13 min |
| 126. | 6/13/2024 | South Station Bus Terminal | 6:38 AM | 7:01 AM | 23 min | 18 min |
| 127. | 6/13/2024 | South Station Bus Terminal | 7:50 AM | 8:10 AM | 20 min | 15 min |
| 128. | 6/13/2024 | South Station Bus Terminal | 8:13 AM | 8:27 AM | 14 min | 9 min |
| 129. | 6/13/2024 | South Station Bus Terminal | 8:26 AM | 8:53 AM | 37 min | 32 min |
| 130. | 8/26/2024 | South Boston Bus Lot | 4:57 AM | 5:16 AM | 19 min | 14 min |
| 131. | 8/26/2024 | South Boston Bus Lot | 5:34 AM | 5:42 AM | 8 min | 3 min |
| 132. | 8/26/2024 | South Boston Bus Lot | 6:44 AM | 7:01 AM | 17 min | 12 min |

| | | | | | | |
|---|---|---|---|---|---|---|
| 133. | 8/26/2024 | South Boston Bus Lot | 8:00 AM | 8:20 AM | 20 min | 15 min |
| 134. | 8/26/2024 | South Boston Bus Lot | 8:58 AM | 9:10 AM | 12 min | 7 min |
| 135. | 8/30/2024 | South Boston Bus Lot | 5:41 AM | 5:59 AM | 18 min | 13 min |
| 136. | 8/30/2024 | South Boston Bus Lot | 5:59 AM | 6:17 AM | 18 min | 13 min |
| 137. | 8/30/2024 | South Boston Bus Lot | 7:15 AM | 7:35 AM | 20 mins | 15 mins |
| 138. | 8/30/2024 | South Boston Bus Lot | 7:38 AM | 8:00 AM | 22 mins | 17 mins |

139.    Plaintiff's investigator observed frequent and regular idling at the South Boston Bus Lot and South Station Bus Terminal, between the hours of 5:00 am and 9:00 am on weekdays between December 2023 and August 2024.

140.    Plaintiff's investigator visited the South Boston Bus Lot on 14 days in six separate months. The visits occurred across six different months (December, January, April, May, June, and August), and across five different days (Monday, Tuesday, Wednesday, Thursday, Friday).

141.    Greyhound's vehicles were found idling in excess of five minutes 13 out of the 14 instances Plaintiff's investigator visited the South Boston Bus Lot.

142.    Upon information and belief, Greyhound had a pattern and practice of frequent and regular idling in excess of five minutes at the South Boston Bus Lot on every day that the buses were operating from December 2023 to August 2024.

143.    Upon information and belief, Greyhound will continue to frequently and regularly idle vehicles at the South Boston Bus Lot every day that the buses operate.

144.    Plaintiff's investigator visited the South Station Bus Terminal on two days in May and June 2024.

145.     Greyhound's vehicles were found idling in excess of five minutes both times Plaintiff's investigators visited South Station Bus Terminal.

146.     Upon information and belief, Greyhound will continue to frequently and regularly idle vehicles at South Station Bus Terminal every day that the buses operate.

147.     Plaintiff believes that additional information from other sources not yet publicly available, including any technology installed in Greyhound's buses that is capable of monitoring and recording excess idling, will reveal additional violations.

## PLAINTIFF AND ITS MEMBERS ARE HARMED BY DEFENDANT'S CLEAN AIR ACT VIOLATIONS

148.     Plaintiff's members live, rent or own property, study and attend school, use transit, and/or spend time shopping, recreating, and conducting activities near the locations where vehicles owned, operated, and/or managed by Greyhound were observed idling.

149.     Plaintiff's members reside in and around Boston, Massachusetts.

150.     Plaintiff's members include individuals who work, recreate, visit family and friends near the South Boston Lot and South Station; and who visit restaurants and shops near these locations.

151.     Plaintiff's members take the MBTA number seven bus from Summer Street and First Street weekly, directly next to the South Boston Bus Lot.

152.     Plaintiff's members recreate at Medal of Honor Park weekly.

153.     Plaintiff's members include individuals who walk outdoors near the South Boston Bus Lot.

154.     Plaintiff's members take buses to the South Station Bus Terminal weekly.

155.     Plaintiff's members breathe the emissions and air pollutants which Greyhound causes, suffers, allows, or permits to be emitted from vehicles they own, operate and/or manage.

156.    Plaintiff's members can observe or smell air pollution coming from vehicles owned, operated and/or managed by Greyhound.

157.    Plaintiff's members who live near and spend time at the parks, places of worship, cultural centers, transit stations, hospitals, and/or educational institutions near the locations where vehicles owned, operated, and/or managed by Greyhound were observed idling have asthma, experience trouble breathing, and/or suffer from other respiratory symptoms.

158.    Plaintiff's members are reasonably concerned about inhaling carcinogens and other pollutants emitted by vehicles owned, operated, and/or managed by Greyhound.

159.    Plaintiff's members want to breathe as little air pollution from vehicles owned, operated, and/or managed by Greyhound as possible.

160.    Plaintiff's members are reasonably concerned that the emissions released from vehicles owned, operated, and/or managed by Greyhound have harmed, continue to harm and threaten, and will harm and threaten their health, well-being, quality of life, and enjoyment.

161.    The greater the exposure to particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde, and the higher the levels of exposure, the more health and well-being are compromised.

162.    The actual and threatened harm to Plaintiff's members would be redressed by an injunction, civil penalty, and other relief that prevents or deters future violations of the Act by Greyhound and that requires  Greyhound to offset its pollution from these violations by reducing its pollution or otherwise remediating harm that has already been caused to Plaintiff's members and their local communities.

## CLAIM FOR RELIEF

**Cause of Action:**
**Violation of Massachusetts Idling Regulation**

163.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

164.     The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) prohibits "the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes."

165.     A bus, including the shuttle buses at issue here, is defined as a "motor vehicle" under 310 C.M.R. § 7.00.

166.     Greyhound caused, suffered, allowed, and/or permitted motor vehicles to operate unnecessarily while those vehicles were stopped for a foreseeable period of time in excess of five minutes.

167.     The operation of the engines of vehicles owned, operated, and/or managed by Greyhound did not occur within any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

168.     Greyhound violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, numerous times during specific incidents observed by an investigator in December of 2023, and January, April, May, June, and August of 2024.

169.     Upon information and belief, Greyhound violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, regularly and frequently since December 2023 at the South Boston Bus Lot.

170.     Upon information and belief, Greyhound violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, regularly and frequently since May 2024 at the South Station Bus Terminal.

171.     Pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 40 C.F.R. §§ 19.2, 19.4, Greyhound is liable for a civil penalty of up to $121,275 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after December 27, 2023.

## RELIEF REQUESTED

172.     Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Declare Greyhound to have violated and to be in violation of 310 C.M.R. § 7.11(1)(b) for causing, suffering, allowing and/or permitting motor vehicles to operate unnecessarily while those vehicles were stopped for a foreseeable period of time in excess of five minutes;

(b) Permanently enjoin Greyhound from causing, suffering, allowing, or permitting the idling of any motor vehicles in violation of 310 C.M.R. § 7.11(1)(b);

(c) Order Greyhound to comply fully and immediately with 310 C.M.R. § 7.11(1)(b);

(d) Order Greyhound to pay civil penalties of $121,275 per day for each violation for all CAA violations that occurred after November 2, 2015 and that are assessed on or after December 27, 2023;

(e) Order Greyhound to take appropriate actions to remedy harm caused by Greyhound 's noncompliance with the Clean Air Act;

(f) Award Plaintiff's costs (including reasonable attorney, witness, and consultant fees) as permitted by Section 304 (d) of the Clean Air Act, 42 U.S.C. § 7604(d); and

(g) Award any such other and further relief as the Court may deem appropriate.


Respectfully submitted this 10th day of September, 2024,

CONSERVATION LAW FOUNDATION, INC.,

By its attorneys,

/s/  Clare Soria
Clare Soria, Esq.
Massachusetts Bar No. 711648
Conservation Law Foundation, Inc.
62 Summer St.
Boston, MA 02110
(617) 850-1789
csoria@clf.org

Heather A. Govern, Esq.
Massachusetts Bar No. 688482
Conservation Law Foundation, Inc.
62 Summer St.
Boston, MA 02110
(617) 850-1765
hgovern@clf.org

ATTORNEYS FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 10, 2024, the foregoing document was filed through the ECF system, by which means a copy of the filing will be sent electronically to all parties registered with the ECF system.

*<u>/s/ Clare Soria</u>*
Clare Soria
